[Cite as *In re K.G.*, 2022-Ohio-3218.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.G.

C.A. No.      30221

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN 18-05-000483

DECISION AND JOURNAL ENTRY

Dated: September 14, 2022

CARR, Judge.

{¶1}   Appellant A.D. ("Grandmother") appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division. This Court reverses and remands the matter for proceedings consistent with this decision.

I.

{¶2}   Much of the history of this case was summarized in a prior appeal:

Mother and Father are the biological parents of K.G. (d.o.b. 3/12/16). Grandmother and Grandfather are the paternal grandparents of the child. Grandmother and Grandfather were married and divorced many years ago, and each has remarried. The grandparents, along with their spouses, have homes in California, where they reside approximately 30 minutes away from each other.

Summit County Children Services Board ("CSB" or "the agency") removed the then two-year-old K.G. from Mother's and Father's care based on concerns that they were unemployed, about to be evicted, and had admitted to using methamphetamines in the presence of the child. Although CSB alleged that the child was abused, neglected, and dependent, the agency dismissed the allegations of abuse and neglect when the parents stipulated to the child's dependency. Mother and Father further agreed that it was in the best interest of the child to place him in the temporary custody of CSB. Shortly thereafter, with agreement of the parties,

K.G. was placed in the temporary custody of kinship caregivers who resided in Summit County, Ohio. CSB maintained protective supervision of the child.

As part of its efforts to find a safe and permanent placement for the child, CSB then initiated Interstate Compact for the Placement of Children ("ICPC") assessments for both Grandmother and Grandfather in California. Ten months into the case, CSB moved for a first six-month extension of temporary custody to the kinship caregivers. Although Mother and Father were noncompliant with their case plan objectives, the ICPC assessments for both Grandmother and Grandfather were expected to be completed soon. In the meantime, both grandparents were granted leave to intervene as parties in the case. Grandmother and Grandfather each filed a motion for legal custody of the child. At the time of the sunset hearing, Grandfather had been approved for placement, while Grandmother's assessment remained pending. The juvenile court ordered a six-month extension of temporary custody to the kinship caregivers with protective supervision by CSB. In addition, the court granted Grandfather's motion for extended visitation with the child.

CSB filed a notice that the agency and Grandfather agreed that K.G. would spend the entire month of July 2019, with Grandfather in California. During that time, Grandfather was required to allow Grandmother visitation with the child without restrictions as to frequency, duration, and location, except that Grandmother could not have overnight visitations during that time. After Grandmother's ICPC assessment was approved in August 2019, she too was granted an extended visitation with the child in California, spanning three weeks in September and October 2019. Grandmother was required to allow Grandfather to visit with the child during that time. During both periods of extended visitation in California, each grandparent was required to facilitate contact between the child and his parents.

After Grandfather's extended visitation, but before Grandmother's, CSB filed a motion to modify the child's disposition from temporary custody to kinship caregivers to legal custody to a relative, specifically Grandfather. Grandmother and Grandfather each maintained their respective motions for legal custody. Each grandparent submitted a statement of understanding for legal custody.

At the final dispositional hearing, CSB orally withdrew its motion for legal custody to Grandfather. Instead, the assistant prosecutor asserted that the agency was not opposed to an award of legal custody to either grandparent, as each had been approved via ICPC assessment and their respective extended visitations went well. The guardian ad litem also remained neutral and recommended an award of legal custody to either grandparent, with a standard order of visitation for the other. She further recommended that Mother and Father have a minimum of two hours, twice a week, of supervised phone, video, or in-person visitation with the child.

After a hearing, the magistrate recommended granting Grandfather's motion for legal custody, giving Grandmother visitation two weekends per month, and allowing limited supervised visitation for Mother and Father. The juvenile court

adopted the magistrate's decision the same day and ordered the case closed. Both Mother and Grandmother filed timely objections. Grandfather moved to lift the automatic stay imposed based on the pending objections and for placement of K.G. with him in the interim in the interest of stability and permanency for the child, given that both viable legal custodians resided in California. The juvenile court initially denied the motion to lift the stay, but later granted it and ordered K.G. to be placed in California where he would spend alternating two-week periods with Grandfather and Grandmother pending the resolution of the objections and any appeals.

The juvenile court subsequently overruled Mother's and Grandmother's objections. It awarded legal custody to Grandfather, as well as visitation for Grandmother, Mother, and Father.

*In re K.G.*, 9th Dist. Summit No. 29668, 2020-Ohio-4117, ¶ 2-9. Grandmother appealed, and this Court affirmed the judgment. *Id.* at ¶ 1.

**{¶3}** In September 2020, Grandmother filed a motion to modify companionship time with K.G. Grandfather filed a motion to strike or dismiss Grandmother's motion. On December 23, 2020, the magistrate issued an entry which indicated in item number six that Grandfather and Grandmother agreed that Grandmother would have companionship time with K.G. the second and fourth weekend of every month from Friday at 6:00 p.m. until Sunday at 4:00 p.m. or as otherwise agreed and that Grandmother would have a phone call with the child every Wednesday at 6:00 p.m. That same day the trial court adopted the magistrate's entry.

**{¶4}** On June 25, 2021, Grandmother filed another motion to modify companionship time, this time seeking extended vacation time with K.G. Grandfather filed a motion to strike or dismiss Grandmother's motion. Grandfather argued Grandmother's motion was barred by res judicata and that she failed to demonstrate a change of circumstances.

**{¶5}** A hearing was held, and the magistrate issued a decision on September 30, 2021. The magistrate concluded:

Upon review of the record, the Court finds this matter must be resolved as [a] matter of law. Order number 6 of the Court's decision issued December 23, 2020, clearly

indicates that the Court's order regarding paternal grandmother's parenting time was based upon an agreement reached between paternal grandfather, the child's legal custodian, and paternal grandmother. Paternal grandfather and paternal grandmother no longer agree and paternal grandmother testified that she was never in agreement with "agreement" reached and outlined in the Court's December 23, 2020 Decision. Under Ohio law, a grandparent has no legal right to companionship time with a child who was born to legally married, living parents. [*See*] *In re M.N.*, 9th Dist. Wayne No. 07CA0088, 2008-Ohio-3049, ¶ 20. The only rights provided to a nonparent are set forth in R.C.[]3109.051(B), []3109.11, and []3109.12. This child was born to legally married parents and neither parent is deceased. Therefore, since paternal grandmother has no legal right to companionship time with the child, the order issued on December 23, 2020 is unenforceable. Thus, the order issued on December 23, 2020, having been made in error, shall be vacated. Paternal grandmother shall be removed as a party to this action.

The trial court adopted the magistrate's decision the same day.

{¶6} Grandmother filed objections to the magistrate's decision arguing, inter alia, that it was error to deny grandmother's motion, remove her as a party, and vacate the December 23, 2020 order.

{¶7} On January 3, 2022, the trial court issued a judgment entry ruling on the objections. The trial court concluded that Grandmother should be removed as a party because "there was no longer a basis for Grandmother to be a party to th[e] matter." The trial court then went on to address Grandmother's visitation with K.G. It stated:

When the Magistrate awarded Paternal Grandfather legal custody of [K.G.] on October 23, 2019, the Magistrate also awarded Paternal Grandmother visitation with [K.G.] As this was a dispositional order, the Magistrate did not have the authority to issue this visitation order. R.C. 2151.353 does not provide for non-parent (or grandparent) visitation as it does for parental visitation. Because the Magistrate did not have the authority to issue this dispositional order, all subsequent references or modifications of Paternal Grandmother's visitation order are unenforceable.

* * *

Since the Magistrate did not have the authority to issue the October 23, 2019 order awarding Paternal Grandmother visitation, that order is unenforceable. Consequently, neither Paternal Grandmother's September 17, 2020 Motion to Modify Companionship Time nor Paternal Grandmother's June 25, 2021 Motion to Modify Companionship Time should have been heard by the Magistrate.

Therefore, the Magistrate's denial of Paternal Grandmother's Motion for Modification of Companionship Time is moot.

**{¶8}** The trial court then ordered that "[t]he Magistrate's previous orders regarding Paternal Grandmother's visitation/companionship time with [K.G.] are stricken * * *."

**{¶9}** Grandmother has appealed the trial court's ruling, raising six assignments of error, which will be addressed out of sequence to facilitate our review.

II.

## **ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ERRED IN VACATING THE DECEMBER 23, 2020[] ORDER AND THE SUBSEQUENT MODIFICATION SUA SPONTE WHEN, EVEN ASSUMING AN ERROR *EN ARGUENDO*, AS THE ORDER WAS NOT VOID AB INITIO AND NO PARTY HAS MADE A REQUEST THAT IT BE VACATED.

**{¶10}** Grandmother argues in her fourth assignment of error that the trial court erred in vacating certain orders as void.

**{¶11}** Here, it appears that the trial court believed that it lacked subject matter jurisdiction to enter the October 23, 2019 order granting Grandmother visitation with K.G. and thus its subsequent orders related to Grandmother's visitation with K.G. were also void. As the trial court's premise is incorrect, we agree that the trial court erred.

**{¶12}** "The juvenile court's determination regarding its subject matter jurisdiction implicates a question of law which this Court reviews de novo." *In re J.L.M.*, 9th Dist. Summit No. 28867, 2018-Ohio-2175, ¶ 9. "A juvenile court may exercise jurisdiction only if expressly granted the authority to do so by statute." (Citations omitted.) *Id.*

CSB initiated the underlying case pursuant to Revised Code Section 2151.23(A)(1), when it filed its complaint[] alleging that the child[] w[as] abused, neglected, and/or dependent. The Ohio Supreme Court has clarified that the juvenile court operates pursuant to its exclusive original jurisdiction when it holds an adjudicatory hearing, and, if it adjudicates the child abused, neglected, or dependent, when it issues its

initial dispositional order pursuant to Revised Code Section 2151.353(A). *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Common Pleas Court*, 150 Ohio St.3d 230, 2016-Ohio-7382, ¶ 21. Those dispositions include protective supervision, temporary custody, legal custody, permanent custody, planned permanent living arrangement, and removing the child from the home and issuing a no contact order. R.C. 2151.353(A)(1)-(6). Thereafter, the juvenile court's exclusive jurisdiction terminates and it continues to address ongoing issues in the case pursuant to its exercise of "continuing jurisdiction over the child." *State ex rel. Allen Cty. Children Servs. Bd.* at ¶ 23. Furthermore, Revised Code Section 2151.353(F)(1) provides in relevant part: "The [juvenile] court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section * * * until the child attains the age of eighteen years * * *." Only age or adoption terminates the continuing jurisdiction of the juvenile court. *Id.*

*In re J.L.M.* at ¶ 10; *see also In re Z.R.*, 144 Ohio St.3d 380, 2015-Ohio-3306, ¶ 16 ("It is undisputed that all Ohio juvenile courts have subject-matter jurisdiction over dependency cases."); *In re M.R.L.*, 9th Dist. Summit No. 25618, 2011-Ohio-4997, ¶ 9 ("This case, involving the disposition of M.R.L. following his adjudication as a neglected child, falls squarely within the subject matter jurisdiction of the juvenile court as delineated in R.C. 2151.23(A)(1).").

{¶13} "Once a tribunal has jurisdiction over both the subject matter of an action and the parties to it, * * * the right to hear and determine is perfect; and the decision of every question thereafter arising is but the exercise of the jurisdiction thus conferred * * *." (Internal quotations and citations omitted.) *Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, ¶ 13. "[A]ny irregularity in the juvenile court's exercise of its valid subject matter jurisdiction [] render[s] the dispositional order voidable" and subject to challenge on direct appeal. *In re M.R.L.* at ¶ 9.

{¶14} Thus, the trial court possessed subject matter jurisdiction to enter the October 23, 2019 order. That entry is accordingly not void. *See Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19 ("If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void."). Given that the order was not void, there was no basis for the trial court to vacate it.

"Moreover, a trial court lacks authority to vacate a judgment that has been affirmed on appeal." *In re M.H.*, 6th Dist. Lucas No. L-18-1012, 2018-Ohio-3817, ¶ 15. The October 23, 2019 entry was also the subject of the original appeal in this matter, and the trial court's decision was affirmed on appeal. *See In re K.G.*, 2020-Ohio-4117, at ¶ 1. Based on the foregoing, we conclude the trial court lacked the authority to vacate and/or strike the October 23, 2019 entry. Further, because its decision to vacate the subsequent orders related to Grandmother's visitation was based upon its conclusion that the October 23, 2019 entry was void, and that conclusion was erroneous, we likewise conclude it erred in vacating subsequent orders related to Grandmother's visitation.

{¶15} Grandmother's fourth assignment of error is sustained.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REMOVING PATERNAL GRANDMOTHER AS A PARTY.

{¶16} Grandmother argues in her second assignment of error that the trial court erred in removing Grandmother as a party. Based upon the circumstances of this case, we agree.

{¶17} "Civ.R. 24 allows parties to join in an action when they have a legal interest or right in the proceeding. The Rules of Civil Procedure further empower trial courts to remove parties upon 'motion of any party or of its own initiative at any stage of the action and on such terms as are just.' Civ.R. 21." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 11. "[W]hile a court does not abuse its discretion in removing grandparents as parties when they are no longer necessary under Juv.R. 2(Y) and when the grandparents have no independent legal interest in the case, the court may exercise its discretion and allow them to remain, if circumstances warrant it and it is just to do so." *Id.* at ¶ 14.

{¶18} Based upon the language of the trial court's judgment entry, it appears that the trial court removed Grandmother as a party based upon its mistaken impression that its original entry

regarding Grandmother's visitation was void and unenforceable. As we have concluded above that that entry was not void, the trial court's basis for removing Grandmother as a party is also not supported by the record.

{¶19} Grandmother's second assignment of error is sustained.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THAT THE DECEMBER 23, 2020[ ENTRY] WAS MADE IN ERROR AND THUS SHOULD BE VACATED.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN REMOVING PATERNAL GRANDMOTHER AS A PARTY WHEN, EVEN WHEN VACATING THE DECEMBER 23, 2020[] ORDER, ORDERS EXIST REGARDING HER COMPANIONSHIP TIME.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PATERNAL GRANDMOTHER'S MOTION FOR MODIFICATION OF COMPANIONSHIP TIME.

## ASSIGNMENT OF ERROR VI

THE MAGISTRATE'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} Based upon this Court's resolution of Grandmother's second and fourth assignments of error, her remaining assignments of error have either been rendered moot or are not properly before this Court at this time. Upon remand, the trial court must consider Grandmother's motion in light of this Court's decision.

III.

{¶21} Grandmother's second and fourth assignments of error are sustained. The remaining assignments of error are either moot or not properly before the Court at this time. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed, and the matter is remanded for proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ROBERT C. ALDRIDGE, Attorney at Law, for Appellant.

CORINNE HOOVER SIX and TAD ORVAL HOOVER, Attorneys at Law, for Appellee.

SHUBHRA AGARWAL, Guardian ad Litem.